UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TOMMY AURTHOR DAILEY,<br><br>Plaintiff,<br><br>v.<br><br>TANISHA QUIROGA, et al.,<br><br>Defendants. | CAUSE NO. 1:23-CV-189-HAB-SLC |

OPINION AND ORDER

Tommy Aurthor Dailey, a prisoner without a lawyer, filed an amended complaint. ECF 7. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Dailey alleges his rights were violated when he was incarcerated at the Allen County Jail.[1] On the first day of Ramadan in 2023, he complained to Tanisha Ouiroga, a kitchen employee of Tiger Food Services, that the dinner sacks were not "proper." ECF 7 at 3. Specifically, Dailey claims they didn't contain meat, vegetables, or cheese. Rather, they consisted of "6 small peanut butter packs the size of mayo packs, 3 jelly packs that's even smaller, 4 tortilla chips . . . along with the smallest peice (sic) of cake I ever seen." Id.[2] Dailey believes the meals caused him to become constipated. He wrote to Tanisha Ouiroga, Second Shift Commander Toney Malloris, and Grievance Specialist Tommy Wacasey with his concerns, and he was informed the jail "follow[s] a menu that's for Ramadan." Id. Tommy Wacasey responded to a grievance by stating he would speak with the Chaplain and Jail Commander, but Dailey was never given an update. Later, Dailey wrote to Tanisha Ouiroga to let her know "the menu say[s] I get 2 cookies" but he was not given any. Id. at 4. She responded by noting that "the peice (sic) of cake are the cookies in cake form." Id. Dailey alleges he suffered from "hunger pains" every day of Ramadan. He wanted to break his fast, but "other Muslims and guys fasting kept harassing and threatening" him about doing so. Id. Dailey states that "[n]o other Muslim had meal issues." Id.

After he had filed several grievances, his food started being tampered with. He notes his breakfast trays were dirty, his oatmeal was spoiled, and items like cake were

---

[1] He has since been transferred. See ECF 8.

[2] In a grievance attached to the complaint, Dailey admits the sacks also contain "4 slices of bread" which is the equivalent of "2 peanut butter and jelly sandwiches." ECF 7 at 11.

2

missing from his sack on several occasions. He says other officers witnessed the food that had been tampered with on two occasions in mid-April,[3] but he doesn't say who they saw doing it. Dailey believes Tanisha Ouiroga "tamper[ed] with my food in retaliation for writing request[s] and filing grievances about meals." *Id*. at 5. Dailey also complains he didn't receive "double portion[s]" of breakfast during Ramadan or a celebratory Eid al-Fitr meal at the end of it. *Id*. at 4. All of this caused Dailey weight loss—although he doesn't say how much—and "constant stress" during the month of Ramadan. *Id*. He has sued the defendants for monetary damages.

"The Free Exercise Clause [of the First Amendment] prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation and internal quotation marks omitted). "[F]orcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Id.* at 380. However, "[i]n the prison context, a regulation that impinges on an inmate's constitutional rights, such as one imposing a 'substantial burden' on free exercise, may be justified if it is 'reasonably

---

[3] On April 16, 2023, Officer Tulk saw that his sack was missing the cake and some peanut butter. On April 17, 2023, Officer Campbell noticed that his oatmeal was spoiled and smelled bad.

3

related to legitimate penological interests.'" *Kaufman*, 733 F.3d at 696 (quoting *O'Lone v. Shabazz,* 482 U.S. 342, 349 (1987)).

Here, Dailey's claims are insufficient to state a claim. It cannot plausibly be inferred that there was no meal system in place at the Allen County Jail for inmates observing Ramadan. *See Thompson v. Bukowski*, 812 Fed. Appx. 360, 365 (7th Cir. 2020). Rather, Dailey admits "[n]o other Muslim had meal issues" and that he received breakfast in the morning and a sack for dinner containing the ingredients to make two peanut butter and jelly sandwiches, some chips, and a dessert. While Dailey complains the sack meals didn't contain meat, cheese, or vegetables—and quibbles over the definition of cake versus cookies—he doesn't plausibly allege the contents of the sack violated the tenants of his religion. In fact, he doesn't even describe what type of religious diet he wished to follow. *See Jones v. Carter*, 915 F.3d 1147, 1148 (7th Cir. 2019) ("[M]any Jewish and Muslim inmates would find a nutritionally adequate vegetarian diet that otherwise satisfies kosher standards to be fully compatible with their beliefs[.]"); *see also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810 (8th Cir. 2008) ("The [Bureau of Prisons] decided to serve kosher meals in the Common Fare plan after reviewing the dietary requirements of various religious faiths. It concluded that a kosher meal was the strictest diet and subsumed all other religious dietary needs."); *Williams v. Morton*, 343 F.3d 212, 216-21 (3d Cir. 2003) (concluding at summary judgment that decision to serve vegetarian meals to prisoners requesting halal meals containing meat was reasonably related to legitimate penological interests and did not violate prisoners' free exercise rights). Dailey also complains that he didn't receive

4

double portions of breakfast,[4] but he doesn't explain what food he did receive for breakfast other than oatmeal, so the court cannot determine that he was failing to receive adequate nutrition overall.[5] Accordingly, Dailey has not plausibly alleged the meals provided to him during Ramadan violated the free-exercise clause of the First Amendment.[6]

Dailey also alleges he was retaliated against when his food was tampered with after he began complaining about it. Under the First Amendment, an inmate cannot be punished for engaging in certain kinds of speech. To assert a First Amendment

---

[4] However, a response to his grievance states, "You are getting the correct meal. These SACKS are for dinner, your (sic) fasting so with that being said please take in consideration you're getting x2 in the morning in breakfast and you don't get lunch." ECF 7 at 13.

[5] To the extent Dailey is attempting to bring a claim pursuant to the Eighth Amendment, he has failed to do so. Under the Eighth Amendment, inmates are not entitled to food "that is tasty or even appetizing," but they must receive food adequate to meet their dietary needs. *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004); *see also Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017). In evaluating whether a prisoner was served an adequate quantity of food, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). For an individual defendant to be held liable, that defendant must have acted with deliberate indifference; deliberate indifference is the "equivalent of criminal recklessness, in this context meaning that they were actually aware of a substantial risk of harm to [Dailey's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). Here, Dailey alleges he received sack dinners during the month of Ramadan that contained items to make two peanut butter and jelly sandwiches, chips, and a dessert. He claims items like peanut butter or cake were missing on several occasions, but he only refers to two specific instances when this happened. He admits he routinely received breakfast, but he doesn't provide additional details about the contents of the breakfast. While he claims he was hungry and that he lost weight, he doesn't say how much weight was lost over the course of the month. Without more, these allegations are insufficient to state a plausible Eighth Amendment claim. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original); *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content).

[6] The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion [by an inmate], whether or not compelled by, or central to, a system of religious belief." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also* 42 U.S.C. § 2000cc-5(7)(A). However, RLUIPA only provides for injunctive relief against state officials, not monetary damages. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Dailey has requested only monetary damages—and is no longer incarcerated at the jail he alleged the events happened in—so he has not stated any claims under RLUIPA either.

5

retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Filing a grievance qualifies as "protected activity" for purposes of a First Amendment claim. *Gomez*, 680 F.3d at 866.

Although Dailey adequately alleges he engaged in protected activity—by filing grievances about his meals—the rest of his retaliation allegations are not as clear. He claims his food was generally being tampered with, but he only provides two examples—on April 16, 2023, an officer "witnessed" that his sack was "short of items/cake and peanut butter missing" and the next day an officer witnessed spoiled oatmeal on his tray. ECF 7 at 4. He states he told the officers this had happened "several times" and speculates it was done by Tanisha Ouiroga, but he doesn't provide any additional details. *Id*. Based on these sparse allegations, Dailey hasn't plausibly alleged he suffered a deprivation that could "dissuade a reasonable person from engaging in future First Amendment activity," *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015), or that Tanisha Quiroga took these actions in retaliation for his grievance. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in

6

original); *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content).

Dailey may also be attempting to bring an Establishment Clause claim. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . .." U.S. Const. amend. I, cl. 1. Violations can occur when the state allegedly prefers one religion over another "without a legitimate secular reason." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). "Prisons cannot discriminate against a particular religion except to the extent required by the exigencies of prison administration." *Maddox v. Love*, 655 F.3d 709, 719–20 (7th Cir. 2011) (internal quotation marks and omitted).

Here, Dailey claims the Jail allowed "Christians to have services but not Muslims." ECF 7 at 6. However, he doesn't provide any information about what types of services he is referring to, when they occurred, or whether he requested and was denied access to a specific service based on his religious needs. These claims are simply far too vague to state a claim. *See Swanson*, 614 F.3d at 403.[7]

This complaint does not state a claim for which relief can be granted. If Dailey believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint, he may file a second amended complaint because "[t]he usual standard in

---

[7] Dailey does allege he failed to receive a "Ramadan feast tray" after the Ramadan fast was completed, but he doesn't suggest that prisoners of other religions received celebratory meals while Muslims did not. Similarly, Dailey claims "trustees" were allowed to have double portions of their meals, while he was not given double portions during Ramadan. ECF 7 at 6. However, he doesn't plausibly allege that these "trustees" were a part of a religious group to which preferential treatment was given over Muslims, so these allegations do not state an Establishment Clause violation either. *See e.g., Kaufman*, 419 F.3d at 683.

7

civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the words "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Tommy Aurthor Dailey until **September 6, 2024**, to file a second amended complaint; and

(2) CAUTIONS Tommy Aurthor Dailey if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

SO ORDERED on August 7, 2024.

                                        s/Holly A. Brady
                                        CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT